# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| ROBERT H. ADAIR *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 00-0566 (RMU) |
| | : | | |
| v. | : | Document No.: | 123 |
| | : | | |
| DONALD C. WINTER,[1] | : | | |
| Secretary of the Navy *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |
| CHAPLAINCY OF FULL GOSPEL | : | | |
| CHURCHES *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | | |
| | : | | |
| v. | : | Civil Action No.: | 99-2945 (RMU) |
| | : | | |
| DONALD C. WINTER, | : | Document No.: | 195 |
| Secretary of the Navy *et al.*, | : | | |
| | : | | |
| Defendants | : | | |

## MEMORANDUM OPINION

### DENYING THE PLAINTIFFS' MOTION FOR DECLARATORY JUDGMENT

## I.    INTRODUCTION

The plaintiffs in this consolidated case are current and former Navy chaplains and an

ecclesiastical endorsing agency for military chaplains.  The plaintiffs charge that the hiring,

retention and promotion policies of the Navy Chaplain Corps demonstrate an unconstitutional

endorsement of liturgical Christian sects over non-liturgical Christian sects.  Currently before the

---

[1]    The court substitutes the current Secretary of the Navy, Donald C. Winter, acting in his official capacity, for his predecessor Gordon R. England.  FED. R. CIV. P. 25(d)(1).

court is the plaintiffs' motion for declaratory judgment.[2]  This motion does not directly concern

the plaintiffs' underlying constitutional claims.  Rather, the plaintiffs' instant motion comprises a

constitutional challenge to 10 U.S.C. § 618(f),[3] which, as the D.C. Circuit determined in a

previous appeal in this case, serves as an absolute bar to civil discovery of the proceedings of

Naval officer promotion selection boards.  *In re England*, 375 F.3d 1169 (D.C. Cir. 2004).  In

essence, the plaintiffs argue that § 618(f), as applied to their underlying constitutional challenges

of Naval policy, denies them an opportunity for meaningful judicial review because the evidence

barred by § 618(f) is essential to their claims.  Because there is no general constitutional right to

statutorily privileged evidence essential to establishing a constitutional claim and because

evidence of the proceedings of individual promotion boards is not essential to the plaintiffs'

constitutional challenges to Naval policies, the court denies the plaintiffs' motion for declaratory

judgment.

---

[2]    The plaintiffs, in the alternative, move for summary judgment.  Pls.' Mot. at 14.  The court is at a loss as to how the present motion is one for summary judgment, even in the alternative.  The motion focuses solely on the constitutionality of 10 U.S.C. § 618(f)'s bar to discovery, not on the plaintiffs' underlying constitutional and statutory claims.  *Id.* Indeed, the plaintiffs' central argument is that without discovery into promotion-board proceedings, they will be *unable* to prove their claims.  Bizarrely, in their reply, the plaintiffs suggest that if the court denies the plaintiffs' motion for declaratory judgment, the court should grant summary judgment in the *defendants'* favor.  Pls.' Reply at 6 (arguing that "[w]here the plaintiff has the burden, all the defendant must do is show that the plaintiff cannot meet the burden [and] no evidence of discrimination or discriminatory intent on promotion boards means no facts which meets Plaintiffs' burden; in effect, this means no viable claim and no judicial review").  Also, the plaintiffs have not filed a statement of undisputed material facts, as required by the Local Rules.  LcvR 56.1.

[3]    Section 618(f) provides that "[e]xcept as authorized or required by this section, proceedings of a selection board convened under section 611(a) of this title may not be disclosed to any person not a member of the board."  10 U.S.C. § 618(f).

## II.   BACKGROUND

### A.   Factual Background

Because the court has published nearly a dozen opinions in this case, it will dispense with

a full recitation of the lengthy and convoluted factual background.[4]  The plaintiffs' claims fall into

three principal categories: First Amendment Establishment Clause claims, Free Exercise Clause

claims and Equal Protection Clause claims.  *Adair v. England*, 183 F. Supp. 2d 31, 41 (D.D.C.

2002).  First, the plaintiffs charge that the Navy has established and maintained an

unconstitutional religious quota system which enables the Navy to hire, promote and retain

chaplains from liturgical denominations at a rate greater than the liturgical Christian

representation among all Navy personnel.  *Id.* at 41-42.  Second, the plaintiffs allege a variety of

constitutional challenges to the Navy's chaplain-promotion system, including the placement of

one Catholic chaplain on each promotion board, the use of chaplains to rate other chaplains, the

application of "faith group identifier" codes,[5] and the general domination of promotion boards by

liturgical Protestant and Catholic chaplains.  *Id.* at 42-44.  Finally, the plaintiffs assert that the

Navy's discriminatory policies against, and general hostility toward, non-liturgical denominations

deny non-liturgical chaplains and their would-be congregants the constitutional right to free

---

[4]     For a detailed account of the factual allegations underlying both complaints, see *Adair v. England*, 183 F. Supp. 2d 31, 34-38, 40-45 (D.D.C. 2002).  In January 2001, the court's Calendar Committee transferred these cases from Judge June L. Green to this member of the court.  Prior to the transfer, and pursuant to the parties' joint recommendation, Judge Green consolidated the two cases for pretrial purposes.  Order (Sept. 26, 2000).

[5]     Although promotion boards may consider only merit and not denominational affiliation, a three-digit "faith group identifier" code, which identifies the denominational affiliation of the candidate being considered, is allegedly prominently displayed during the promotion process.  Compl. at 37.  For example, 500 signifies a Catholic and 523 signifies a Southern Baptist.  Pls.' Mot. at 3 n.2.

exercise of their religion.  *Id.* at 44-45.

### B.    Procedural History

Without unnecessarily expending judicial resources providing a full exposition of the

lengthy procedural background of this case,[6] the court notes the following.   In a previous decision

in this case, the court granted the plaintiffs' motion to compel, ruling that § 618(f)'s general bar

on disclosure did not bar civil discovery of promotion-board proceedings.  *Chaplaincy of Full*

*Gospel Churches v. Johnson*, 217 F.R.D. 250 (D.D.C. 2003).   The D.C. Circuit reversed, holding

that § 618(f)'s command that promotion-board proceedings "may not be disclosed" includes "no

inherent ambiguity . . . that would justify departing from those plain terms pursuant to a judicially-

crafted exception."   *In re England*, 375 F.3d at 1177.   The provision, therefore, constitutes an

absolute statutory privilege from civil discovery of those proceedings under Rule 26(b)(1) of the

Federal Rules of Civil Procedure.  *Id.*   As a result of the D.C. Circuit's decision in *In re England*,

the plaintiffs argue that § 618(f) is unconstitutional.   The court now turns to the plaintiffs' motion.

---

[6]        Most recently, the court denied the plaintiffs' motion for a temporary restraining order
blocking the Navy from discharging plaintiff Michael Belt and other naval chaplains
from active duty in February, 2006.  *Chaplaincy of Full Gospel Churches v. England*,
417 F. Supp 2d 1 (D.D.C. 2006).   On April 20, 2006, the D.C. Circuit summarily
affirmed this court's denial of injunctive relief.  *Adair v. Holderby*, No. 06-5074 (D.C.
Cir. April 20, 2006).

### III.   ANALYSIS

#### A.   The Plaintiffs' Current Constitutional Challenge is Not
#### Barred by the Law-of-the-Case Doctrine

The government argues that by previously questioning the constitutionality of § 618(f) to

the D.C. Circuit in *In re England*, the plaintiffs are barred from raising their present constitutional

challenge.  Defs.' Opp'n at 10-12.  Accordingly, before addressing the difficult constitutional

issues posed by the plaintiffs, the court will consider whether the law-of-the-case doctrine bars the

plaintiffs from raising those claims.  To do so, the court will briefly summerize the issues at play

before the D.C. Circuit in *In re England* and the plaintiffs' arguments levied in that proceeding.

In *In re England*, the D.C. Circuit ruled that § 618(f) constitutes a statutory bar to civil

discovery of promotion-board proceedings.  *In re England*, 375 F.3d at 1181 (stating that despite

the "harsh outcome," § 618(f) "applies to block civil discovery of promotion selection board

proceedings in civil litigation").  In appellate briefing to the *In re England* court, the plaintiffs

argued that if § 618(f) constituted a statutory bar to civil discovery of promotion-board

proceedings, it should not apply in cases (such as this) in which plaintiffs raise constitutional

claims.  Defs.' Opp'n Ex. 6 at 22.

To support this argument, the plaintiffs relied on *Webster v. Doe*, *id.* at 29-32, a case in

which a CIA employee claimed that the CIA violated his constitutional rights by terminating him

because of his sexual orientation.  *Webster v. Doe*, 486 U.S. 592, 596 (1988).  At issue in *Webster*

was Section 102(c) of the National Security Act, which allows the CIA Director to terminate

employees whenever he "shall deem such termination necessary or advisable in the interests of the

United States."  5 U.S.C. § 701(a)(2).  The Court ruled that § 102(c) "fairly exudes deference to

the Director, and appears . . . to foreclose the application of any meaningful judicial standard of review." *Webster*, 486 U.S. at 600.  The Court, however, declined to infer that Congress intended § 102(c) to bar judicial review of constitutional challenges finding no "clear intention" to that effect.  *Id.*  The *Webster* Court utilized this "clear intention" requirement for interpretations of congressional bars to judicial review of constitutional claims to avoid "the 'serious constitutional question' that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim."  *Id.* at 603 (quoting *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 681 n.12 (1986) (noting that "all agree that Congress cannot bar all remedies for enforcing federal constitutional rights") (citation omitted)).

Attempting to shove § 618(f) into the *Webster* framework, the plaintiffs relied in their appellate brief on the legal assumption that a bar to civil discovery of promotion-board proceedings is tantamount to a legislative attempt to preclude judicial review of their constitutional claims.  Defs.' Opp'n Ex. 6 at 22.  The D.C. Circuit rejected this argument, noting that "[s]ection 618(f) . . . does not preclude judicial review of the [plaintiffs'] claims, and the government has not argued that it does."  *In re England*, 375 F.3d at 1180 n.2.  The Circuit noted that the "plaintiffs here remain free to litigate their discrimination claims and to support them with other evidence."  *Id.*

The law-of-the-case doctrine applies to issues expressly addressed in a previous judicial decision and those issues decided by "necessary implication."  *Bouchet v. Nat'l Urban League*, 740 F.2d 799, 806 (D.C. Cir. 1984).  Although the plaintiffs raised *Webster* concerns to the D.C. Circuit, they did not directly challenge the constitutionality of § 618(f).  Rather, the plaintiffs cited *Webster* to encourage the D.C. Circuit to interpret § 618(f) so as not to bar civil discovery of

promotion-board proceedings.  Defs.' Opp'n Ex. 6 at 22-23.  In interpreting § 618(f), the circuit

court rejected the existence of any *Webster*-like concern.  *In re England*, 375 F.3d at 1180 n. 2.  A

necessary implication of this ruling, however, is not that the circuit considered, much less ruled,

on the constitutionality of § 618(f).  Indeed, the plaintiffs could not have challenged the

constitutionality of § 618(f) (because of its total bar on civil discovery), until the D.C. Circuit first

interpreted the statute as a total bar to civil discovery of promotion-board proceedings.

Accordingly, the plaintiffs' constitutional challenge to § 618(f), via its current motion for

declaratory judgment, is not barred by the law-of-the-case doctrine.  The court now turns to an

analysis of the plaintiffs' motion.

### B.    The Court Denies the Plaintiffs' Motion for Declaratory Judgment

### 1.    Legal Standard for Declaratory Judgment Act

Under the Declaratory Judgment Act, a court "may declare the rights and other legal

relations of any interested party" in "a case of actual controversy within its jurisdiction."  28

U.S.C. § 2201(a).  "The term 'actual' is . . . one of emphasis, and not indicative of a different

standard from Article III as to what qualifies as a controversy."  *Fed. Express Corp. v. Air Line

Pilots Ass'n*, 67 F.3d 961, 963 n.2 (D.C. Cir. 1995).  "To satisfy the Constitution's case or

controversy requirement, a party filing a declaratory judgment action must show that there is a

controversy of 'sufficient immediacy and reality to warrant the issuance of a declaratory

judgment.'"  *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1073 (D.C. Cir. 1998) (quoting *Md.

Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).  There must be "a real and

substantial controversy admitting of specific relief through a decree of a conclusive character as

distinguished from an opinion advising what the law would be upon a hypothetical state of facts."

*Fed. Express*, 67 F.3d at 963-64.  If "an action has no continuing adverse impact and there is no

effective relief that a court may grant, any request for judicial review of the action is moot." *Sw.*

*Bell Tel. Co. v. Fed. Commc'n Comm'n,* 168 F.3d 1344, 1350 (D.C. Cir. 1999).  Even if a

controversy exists, however, a district court has broad discretion to withhold declaratory

judgment.  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (noting "the unique breadth of [a

district court's] discretion to decline to enter a declaratory judgment"); *Jackson v. Culinary Sch.*

*of Wash., Ltd.*, 59 F.3d 254, 256 (D.C. Cir. 1995) (stating that the Supreme Court "took great

pains to emphasize the singular breadth of the district court's discretion to withhold declaratory

judgment").

## 2. Section 618(f) Does Not Bar Judicial Review of Constitutional Claims and is Not Unconstitutional as Applied to the Plaintiffs

According to the plaintiffs, discovery into promotion-board proceedings constitutes the

sole means of collecting evidence to support their underlying constitutional claims.  Pls.' Mot. at

13-14.  Thus, they argue that by denying discovery into promotion-board proceedings, § 618(f)

strips them of access to any meaningful judicial review.  *See, e.g.*, Pls.' Mot. at 16 (stating that

"[t]he practical effect of § 618(f)'s bar to discovery is to also bar Plaintiffs' claims that their rights

under . . . the Due Process Clause were violated through illegal criteria and considerations in the

selection[7] board process and proceedings"); *id.* at 17 (stating that "[t]o deny the means to obtain

such proof is to deny the claim").

---

[7]   Although this case involves challenges to selection board practices, the current motion concerns only the plaintiffs' lack of access to discovery of promotion-board proceedings. *In re England*, 375 F.3d at 1181-1182 (reserving judgment on "whether proceedings of other statutory selection boards are discoverable").  The court presumes, therefore, that the plaintiffs' reference to selection boards rather than promotion boards is in error.

The plaintiffs ask the court to rule either (1) that § 618(f) is unconstitutional because it denies judicial review of constitutional claims arising from promotion-board proceedings or (2) that § 618(f), as applied to these plaintiffs, is unconstitutional because it so severely limits relevant discovery so as to deny the plaintiffs *meaningful* judicial review of their constitutional claims.  For reasons that follow, the court rules that § 618(f) does not bar judicial review of constitutional claims and is not unconstitutional as applied to the plaintiffs.

### a.   Section 618(f) Does Not Bar Judicial Review of Constitutional Claims

The plaintiffs contend that § 618(f) is unconstitutional because it bars judicial review of constitutional claims arising out of promotion-board proceedings.  *See, e.g.*, Pls.' Mot. at 22 (arguing that "[b]y barring discovery that provides critical evidence establishing the validity of Plaintiffs' claims, Congress has deprived the courts of judicial review").  The plaintiffs make two principal arguments in support of this position, both of which are unpersuasive.

First, the plaintiffs claim that the *In re England* court ruled that Congress intended § 618(f) to bar judicial review of their claims.  *See, e.g.*, Pls.' Mot. at 16.  The plaintiffs' interpretation of *In re England* stems from their reliance on *Webster*, which requires a "clear statement" of congressional intent for the court to rule that Congress intended to preclude judicial review of colorable constitutional claims.  *See supra* at 5-6.  As the plaintiffs' argument goes, "[b]y holding that Congress intended to bar discovery into promotion board proceedings . . . *In re England* implicitly held that Congress intended to extinguish Plaintiffs' constitutional rights." Pls.' Mot. at 16.

This convoluted argument is plausible only if § 618(f) precludes judicial review in a similar way as did the National Security Act at issue in *Webster* – by foreclosing any "judicial

standard of review" through statutory delegation of promotion decisions to the sole discretion of the Secretary of the Navy. *Webster*, 486 U.S. at 600. Section 618(f), however, does not alter or foreclose any judicial review of Naval policies, it merely restricts the evidence available to the plaintiffs in support of their claims. *In re England*, 375 F.3d at 1180 n.2.

Second, the plaintiffs argue that § 618(f) is unconstitutional because it "bars the judiciary from exercising its power to review the constitutional issue arising from or on promotion boards and transfers that power" to the Secretary of the Navy. Pls.' Mot. at 24. In support of this argument, the plaintiffs cite *Bartlett v. Bowen*, 816 F.2d 695 (D.C. Cir. 1987). *Id.*

In *Bartlett*, the plaintiff challenged the constitutionality of a provision of the Social Security Act which barred Medicare payments for nursing care to anyone who had received similar care in a Christian Science nursing facility. *Id.* at 697. At issue in that case was the constitutionality of an amount-in-controversy provision of the Medicare Act that explicitly barred judicial review of any benefits determination when the amount in controversy was less than $1,000.00. *Id.*

The plaintiffs cite *Bartlett* for its statement that "a statutory provision precluding all judicial review of constitutional issues removes from the courts an essential judicial function under our implied mandate of separation of powers and deprives an individual of an independent forum for the adjudication of a claim of constitutional right." Pls.' Mot. at 24 (quoting *Bartlett*, 816 F.2d at 703). The plaintiffs then remind this court that the D.C. Circuit had "little doubt that such a limitation on the jurisdiction of . . . federal courts to review the constitutionality of federal legislation . . . would be an unconstitutional infringement of due process." *Id.* (quoting *Bartlett*, 816 F.2d 703). Though the words cited by the plaintiffs appear at first blush to lend great weight

10

to their argument, the plaintiffs quotation is selective and takes the D.C. Circuit's statement grossly out of context.

Had the plaintiffs quoted the *Bartlett* court's previous three sentences, the plaintiffs would have learned that the D.C. Circuit's concern for a preclusion of judicial review emanates from a situation in which a plaintiff "would have no judicial forum whatsoever (in either a federal or state court) in which to pursue her constitutional claim." *Bartlett*, 816 F.2d at 703. The *Bartlett* court's concern comes into play only in instances in which a litigant "would have *no forum at all* for the pursuit of her claims." *Id.* at 703-704 (emphasis in original). As the D.C. Circuit stated, due process places limits on Congress' power "when Congress denies *any* forum – federal, state or agency – for the resolution of a federal constitutional claim." *Id.* (emphasis in original).

The present case does not present a situation in which legislation precludes "*all* judicial review of constitutional issues." *Id.* Section 618(f), as the circuit court ruled, simply does not preclude judicial review of the plaintiffs' claims. *In re England*, 975 F.3d at 1180 n.2.

As a corollary to their *Bartlett*-based constitutional challenge, the plaintiffs argue that § 618(f) violates the separation of powers by removing from this court its constitutional authority under Article III. Pls.' Mot. at 25. According to the plaintiffs, a bar of judicial review of constitutional claims realigns the Constitution's assigned powers, expands the congressional power, and "deprive[s] the judiciary of its powers under the Constitution to declare the law." *Id.* at 21.

Because the plaintiffs' arguments rest on the faulty assumption that § 618(f) bars judicial review of the plaintiffs' constitutional claims, the court rejects them. Even if § 618(f) did bar judicial review, however, the plaintiffs' separation of powers argument is without merit. The

plaintiffs suggest that § 618(f) "[e]xpands Congress' power over the judiciary by legislatively altering the judiciary's power to review constitutional claims and issues while increasing the executive's power by removing it from judicial accountability." Pls.' Mot. at 21-22. But, the Constitution vests the judicial power in the Supreme Court and "such inferior Courts as the Congress shall from time to time ordain and establish." U.S. CONST. art. III. That is, a statute proscribing the jurisdiction of the inferior courts or otherwise limits its judicial power "cannot be in conflict with the Constitution." *Sheldon v. Sill*, 49 U.S. (1 How.) 441, 449 (1850); *see also*, *Webster*, 486 U.S. at 611-612 (Scalia, J., dissenting) (stating that the Court "long ago held that the power not to create any lower federal courts at all includes the power to invest them with less than all of the judicial power") (citing *Sheldon*, 49 U.S. (1 How.) 441).

### b.   Section 618(f) is Not Unconstitutional as Applied to the Plaintiffs' Claims

The plaintiffs' as-applied challenge to § 618(f) rest on two predicates: (1) that discovery of promotion-board proceedings is essential to the plaintiffs' claims, and (2) that the Constitution confers to civil litigants a right of access to discovery (though privileged), which is essential to their constitutional claims. The court rules that such discovery is not essential to the plaintiffs' challenges to Naval chaplain promotion guidelines and that civil litigants do not have a constitutional right of access to discovery essential to their constitutional claims.

### i.   Discovery of Promotion-Board proceedings is Not Essential to the Plaintiffs' Claims

The plaintiffs argue that testimony of promotion-board proceedings is essential to their claims because such evidence can establish that the Navy utilized a denominational preference in

deciding which chaplains to promote.[8]  Pls.' Mot. at 16.  According to the plaintiffs, their claims require a showing that "forbidden denominational preferences or improper considerations did, in fact, influence the decisions of the challenged boards," and "[d]irect evidence that discrimination indeed occurred and was intended can only come from the testimony of board personnel."  *Id.* at 17.  In support of this position, the plaintiffs cite *Larson v. Valente*, 456 U.S. 228 (1982), *Wallace v. Jaffree*, 472 U.S. 38, 58-59 (1985), *Edwards v. Aguillard*, 482 U.S. 578, 587 (1987).  Pls.' Mot. at 18-19.  The plaintiffs' reliance on these cases is misplaced and demonstrates the plaintiffs' confusion between challenges to actions by government actors and challenges to agency policy.

The cases cited by the plaintiffs do not stand for the proposition that a plaintiff cannot establish a claim of discrimination absent proof that government actors *themselves* discriminated by implementing an allegedly discriminatory policy.  These cases involve judicial inquiry into the legislative motives for the allegedly discriminatory law or policies, not the motivations of government officials in implementing those laws or policies.[9]  *See, e.g.*, *Larson*, 456 U.S. 228 (reviewing the comments of legislators prior to enactment of a statute in determining that the statute "does not operate evenhandedly [among religious groups], nor was it designed to do so");

---

[8]     In a previous ruling, the court noted that "if the plaintiffs can demonstrate after discovery that some or all of the Navy's policies suggest a denominational preference, then the court will apply strict scrutiny to those policies and practices."  *Adair*, 217 F. Supp. 2d at 14-15.

[9]     The court notes that, given the uncertainty as to the controlling test for Establishment Clause claims, evidence of an impermissible purpose may not be required.  *See, e.g.*, *Lynch v. Donnelly*, 465 U.S. 668, 690 (1984) (O'Connor, J., concurring) (stating that "[t]he purpose prong of the *Lemon* test asks whether [the] government's actual purpose is to endorse or disapprove of religion.  The effect prong asks whether, irrespective of government's actual purpose, the practice under review in fact conveys a message of endorsement or disapproval.  An affirmative answer to either question should render the challenged practice invalid").

*Wallace*, 472 U.S. at 58-59 (reviewing the legislative history of a statute requiring a moment of silence at the beginning of each school day before determining that the practice had no secular purpose); *Edwards*, 482 U.S. at 587 (reviewing the statement of the legislative sponsor of a bill requiring educators to teach creation science in conjunction with evolution as evidence that the purpose of the bill was "to narrow the science curriculum").

The plaintiffs' claims do not depend on demonstrating that individual promotion boards applied an impermissible denominational preference.  The plaintiffs also challenge several Navy promotion policies themselves (irrespective of the intentions of the promotion board members operating under those policies).  The plaintiffs challenge the Navy's practice of identifying the faith group of the chaplain under consideration by promotion board members, the policy of allowing Chiefs or Deputies of Chaplains to approve the membership of promotion boards, and the alleged practice of "stacking" boards with liturgical chaplains to the exclusion of non-liturgical chaplains.  *See generally* Compl.  Evaluation of the board "stacking" claim, for example, to the extent it results from a tacit rather than express Navy policy, cannot possibly depend on testimony from individual board members regarding decisions made *after* having been placed on the board.  Similarly, the plaintiffs' allegation that the Navy instituted a "thirds policy," in which it reserves one-third of its slots in the Chaplain Corps for liturgical Christians does not depend on testimony about the actual proceedings of individual promotion boards.  While § 618(f) prevents individual board members from testifying about the proceedings of a selection board, it does not preclude testimony of board members or Navy administrators concerning directives, orders, or policies (written or unwritten) communicated to board members that may have been intended to infuse a denominational preference into the promotion selection process.

14

As the court noted previously, the Supreme Court has rejected the position that "the plaintiffs . . . should have to shoulder 'a burden of unmistakable clarity' to demonstrate 'government favoritism for specific sects in order to hold the favoritism in violation of the Establishment Clause." *Adair v. England*, 217 F. Supp. 2d 7, 14 (D.D.C. 2002) (quoting *County of Allegheny v. ACLU*, 492 U.S. 573, 608-09 (1989)).  Instead, when litigants challenge a policy on the grounds that it amounts to a denominational preference, while not explicitly discriminating on the basis of religion, they must only present competent evidence that "'*suggest*[s] a denominational preference'" to trigger strict scrutiny.  *Id.* (quoting *County of Allegheny*, 492 U.S. at 608-609) (emphasis added).  The plaintiffs challenge the Navy's policies, not simply the alleged impermissible intentions and actions of individual board members.[10]

Although discovery into the proceedings of individual promotion boards is relevant to the

---

[10]     Actually, were the plaintiffs' claims limited to allegations of illegal conduct by individual promotion boards and board members, the plaintiffs may have failed to exhaust their administrative remedies.  Previously, the court rejected the defendants' arguments that the plaintiffs should be required to exhaust their remedies within the Navy before challenging Naval promotion policies in court.  *Adair*, 183 F. Supp. 2d at 55.  The court based its decision on the fact that the plaintiffs challenge specific policies of the Navy in their complaint, the constitutionality of which are "essentially legal issues."  *Id.*  Similarly, the Ninth Circuit distinguished claims by military chaplains challenging the "structure of the Chaplain Corps" and "policies affecting the structure of the military chaplaincy" - which were not subject to exhaustion requirements - from those alleging "administratively correctable procedural errors, even when these errors are failures to follow due process."  *Wilkins v. United States*, 279 F.3d 782, 786, 789 (9th Cir. 2002).  The Board of Corrections of Naval Records ("BCNR") has the power to review a promotion board's recommendations to the Secretary of the Navy to determine if the board followed selection guidelines and applied proper criteria in making its decisions.  10 U.S.C. § 1552(a); *Saad v. Dalton*, 846 F. Supp. 889, 891 (S.D. Cal. 1994) (holding that a Naval officer was required to exhaust her administrative remedies before bringing a constitutional claim challenging the decision to separate her from active duty).  Because Naval guidelines do not permit promotion decisions based on religious affiliation, individual board decisions violating those guidelines are redressable, first, through the BCNR process.

plaintiffs' claims concerning individual boards' actions, such evidence is not a necessary element of a claim of religious discrimination.  Indeed, the plaintiffs proffered substantial statistical and demographic data related to the hiring, promotion, and selection for early retirement of Naval chaplains.  Pls.' Mot. Ex. 6.  This data may constitute compelling evidence suggesting an intent to employ a denominational preference in promotion decisions.  *See* Defs.' Opp'n Ex. 11 (*Wilkins v. United States*, Civ. No. 99-CV-1579-IEG, Slip Op. at 15 (S.D. Cal. 2005) (reviewing competent statistical evidence of the retirement recommendation rates for liturgical and non-liturgical Naval Chaplains as evidence indicating the absence of a discriminatory intent in permitting chaplains to sit on selection boards)).

To summarize, the plaintiffs challenge both Naval policies and actions of specific promotion boards.  Regarding their challenge to Naval policies, discovery of specific promotion-board proceedings are not essential to their constitutional claims.  Regarding the plaintiffs' challenges to specific promotion boards, because the plaintiffs have available to them other evidence supporting their claims (*e.g.* statistical data), discovery of promotion-board proceedings, though relevant, is not essential.

### ii.   Discovery into Promotion-Board proceedings is Not Constitutionally Required

The second predicate of the plaintiffs' as-applied challenge is more novel and is based on the proposition that litigants have a constitutional right of access to evidence essential to establishing constitutional claims, even when that evidence is privileged by statute.  The Supreme Court has never announced such a right, and the plaintiffs have advanced no coherent theory

supporting one.[11]

Supreme Court precedent suggests that when Congress creates a discovery privilege, the fact that evidence qualifying under the privilege is essential to a constitutional claim cannot defeat the privilege.  In *Baldridge v. Shapiro*, 455 U.S. 345 (1982), the city of Denver, Colorado sought to compel disclosure of "raw" federal census data that included questionnaires from individual persons and address lists under Rule 26 of the Federal Rules of Civil Procedure and the Freedom of Information Act.  *Id.* at 348-52.  The city of Denver sought such data to challenge the accuracy of the census, which it alleged had erroneously undercounted the city's population.  *Id.* at 351.  The city argued that it would be under represented in Congress as a result of this undercount.  *Id.*; *see also* U.S. CONST. art I, § 2, cl. 3 (requiring that representation in the House of Representatives be apportioned among states based on their population as determined by the census).  The Census Act, however, prohibited the disclosure of such data.  *Baldridge*, 455 U.S. at 354-55; 13 U.S.C. § 9(a) (prohibiting the Census Bureau from disclosing census data whereby "the data furnished by any particular establishment or individual . . . can be identified").

The district court in *Baldridge* concluded that without this census information, "the city was denied any meaningful ability to challenge the Bureau's data."  *Baldridge*, 455 U.S. at 351.  Nevertheless, the Supreme Court ruled that the Census Act was an absolute privilege from civil discovery of raw census data.  *Id.* at 361 (citing 13 U.S.C. § 9(a)).  And because Congress is "vested by the Constitution with authority to conduct the census 'as they shall by Law direct,'" the

---

[11]    The plaintiffs' only argument that denial of access to such evidence implicates the Constitution is based on cases discussing the implications of a congressional preclusion of access to "any forum" for consideration of constitutional claims.  As previously explained, *supra* at 10-11, this reliance is unpersuasive.

privilege was a valid exercise of congressional authority, the wisdom of which was "not for [the Court] to decide in light of Congress' 180 years' experience with the census process." *Id.* at 361. Despite the city of Denver's demonstrated need for the information, "[a] finding of 'privilege' . . . shields the requested information from disclosure. *Id.* at 362.

Although the Court did not address whether a different analysis is appropriate for constitutional claims, the city of Denver's interest in congressional representation according to an accurate determination of its population is arguably equally as weighty as those constitutional rights implicated in the plaintiffs' complaint. *See Reynolds v. Sims*, 377 U.S. 533, 568 (1964) (holding that the Equal Protection Clause demands "no less than substantially equal state legislative representation for all citizens"). Furthermore, and as discussed *infra*, the Constitution confers broad authority to Congress to "make Rules for the Government and Regulation of the land and naval forces," U.S. CONST. art. II, § 8, cl. 14, similar to the specific power granted to conduct the decennial census "in such Manner as [Congress] shall by Law direct . . ." *Id.* art. I, § 2, cl. 3.

Generally speaking, criminal proceedings are the only context in which statutory rules prohibiting the introduction of certain kinds of evidence yield to constitutional rights afforded

criminal defendants.[12]  Nevertheless, under the plaintiffs' theory, whenever a plaintiff brings a

constitutional claim and asserts that the evidence is essential to the claim, courts would have to

disregard evidentiary privileges, including possibly, privileges for state secrets, information

implicating national security, information privileged by the attorney-client privilege, and other

such important and universally recognized privileges.[13]

---

[12]    *See Chambers v. Mississippi*, 410 U.S. 284, 302 (1973) (holding that the Sixth
Amendment right to compulsory process guarantees the admission of hearsay evidence,
even when it does not fall into an established hearsay exception, when the evidence is
critical and bears persuasive assurances of trustworthiness); *see also Holmes v. South
Carolina*, 126 S. Ct.1727 (2006) (indicating that a state rule of evidence yields to a
criminal defendant's constitutional right to a "meaningful opportunity to present a
complete defense" when the state rule is "arbitrary" and not based on "any legitimate
interest"); *cf. Crawford v. Washington*, 541 U.S. 36, 68-69 (2004) (holding that the
Confrontation Clause of the Sixth Amendment prohibits introduction of "testimonial"
hearsay statements unless the declarant is unavailable and the defendant had a prior
opportunity to cross-examine the declarant).  It is unclear, however, whether the
Constitution requires introduction of privileged evidence critical to a criminal
defendant's defense.  *See Washington v. Texas*, 388 U.S. 14, 23 n.21 (1967) (applying
the Compulsory Process Clause to defeat a state evidence rule, but noting that "[n]othing
in this opinion should be construed as disapproving testimonial privileges . . ."); *Morales
v. Portuondo*, 154 F. Supp. 2d 706 (S.D.N.Y. 2001) (holding that the priest-penitent
privilege could not prevent introduction of evidence the exclusion of which would render
the defendant's trial fundamentally unfair).

[13]    Although the plaintiffs appear to concede that privileges for evidence implicating
national security concerns are sufficiently weighty to justify barring discovery of
evidence essential to even a constitutional claim, Pls.' Reply at 25, they propose no
feasible method for the court to render this balance on a case-by-case basis.  While
judicial balancing is appropriate in determining whether to recognize a privilege
pursuant to Rule 501 of the Federal Rules of Evidence, a statutory privilege represents a
conclusion of both the legislative and executive branches that the interests furthered by
the privilege outweighs the "normally predominant principle of utilizing all rational
means for ascertaining truth." *Trammel v. United States*, 445 U.S. 40, 50-51 (1980).
The plaintiffs have articulated no rationale supporting the position that federal courts
should supplant this bicameral determination.  *In re England*, 375 F.3d at 1180-1181
(stating that the D.C. Circuit's "unwillingness to soften the import of Congress' chosen
words even if we believe the words lead to a harsh outcome is longstanding.  It results
from 'deference to the supremacy of the Legislature, as well as recognition that
Congressmen typically vote on the language of a bill'") (quoting *Lamie v. United States
Tr.*, 540 U.S. 526, 539 (2004)).

Though § 618(f) may have a collateral effect on a plaintiffs' ability to access evidence relevant to the litigation of constitutional claims (and may undercut the likelihood of the plaintiffs' ultimate success on the underlying merits), the court recognizes no constitutional right of access to discovery in this circumstance, in large part because of Congress' plenary power to regulate the Navy.  Article II gives Congress the power "to provide and maintain a Navy,"  U.S. CONST. art. II, § 8, cl. 13, and "[t]o make Rules for the Government and Regulation of the land and naval forces."  *Id.* art. II, § 8, cl. 14.  The "specificity" with which these "technically superfluous grant[s] of power" are given to Congress by the Constitution denotes the "insistence . . . with which the Constitution confers authority over the Army, Navy, and militia upon the political branches."  *United States v. Stanley*, 483 U.S. 669, 681-82 & n.6 (1987); *see also Orloff v. Willoughby*, 345 U.S. 83, 93-94 (1953) (ruling that "judges are not given the task of running the Army.  The responsibility for setting up channels through which . . . grievances can be considered and fairly settled rests upon the Congress and upon the President of the United States and his subordinates").  "The military constitutes a specialized community governed by a separate discipline from that of the civilian.  Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters."  *Orloff*, 345 U.S. at 93-94.

The plaintiffs argue that the goals furthered by § 618(f) are presumptively invalid in the face of demonstrated need by the plaintiffs in alleging constitutional violations.  Pls.' Mot. at 35-36 (asking the court to find § 618(f) invalid, in part, because "Congress has identified no national threat which it must protect by giving deliberations on promotions 'top secret' security classification, nor has it explained how hiding unconstitutional conduct contributes to the national

defense").  Contrary to this position, however, the D.C. Circuit has cited with approval the executive branch's concerns which underlie § 618(f).  As the circuit stated, § 618(f) is meant to encourage "frank and open discussion" regarding promotion decisions, a goal that would be seriously inhibited if such discussions were "open to public scrutiny."  *In re England*, 375 F.3d at 1169 (quoting Gordon R. England, Secretary of the Navy).  The circuit continued by stating that "[d]isclosure of selection board proceedings in civil discovery would certainly undermine, if not totally frustrate, the purpose of Section 618(f)."  *Id.*, at 1178.

The role of federal courts in reviewing legislation governing the exercise of military powers is necessarily limited, particularly regarding hiring and promotion decisions, to "ensure that the courts do not become a forum for appeals by every soldier dissatisfied with his or her ratings, a result that would destabilize military command and take the judiciary far afield of its area of competence."  *Miller v. Dep't of Navy*, 383 F. Supp. 2d 5, 10 (D.D.C. 2005); *see also Mier v. Owens*, 57 F.3d 747, 751 (9th Cir. 1995) (describing the promotion of military officers as "one of the most obvious examples of a personnel action that is integrally related to the military's structure").  For these reasons, courts are deferential to congressional decisions as to the appropriate structure of the military and the rules governing its internal operations, including the decision embodied in § 618(f) to shield promotion-board proceedings from later disclosure.  *See Gilligan v. Morgan*, 413 U.S. 1, 10 (1973) (noting that the Constitution vests "complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force" exclusively in the legislative and executive branches).

Given the absence of any precedent recognizing a right to statutorily privileged information in a civil case involving constitutional claims, the thinness of the plaintiffs' legal

theory, and the broad deference constitutionally afforded Congress to regulate the Navy, the court declines to adopt the plaintiffs' theory that the Constitution requires discovery in derogation of an absolute statutory privilege.  The court holds that § 618(f) is not unconstitutional as applied to the plaintiffs' claims.

## IV.   CONCLUSION

For the foregoing reasons, the court denies the plaintiffs' motion for declaratory judgment. An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 11th day of September, 2006.


RICARDO M. URBINA
United States District Judge